**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

CASIE GRASSO,                                       :
                                                    :        Civil Action No.:
                          Plaintiff,                :
                                                    :
             v.                                     :        **COMPLAINT**
                                                    :
ROBINSON HOME PRODUCTS INC. and                     :
BILL GILMARTIN, in his individual and               :        **JURY TRIAL DEMANDED**
professional capacities,                            :
                                                    :
                                                    :
                          Defendants.               :
-------------------------------------------------------------X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Casie Grasso ("Plaintiff" or "Ms. Grasso") by and through her undersigned counsel, Wigdor LLP, as and for her Complaint in this action against Defendants Robinson Home Products Inc. ("Robinson" or the "Company") and Bill Gilmartin ("Gilmartin") (collectively, "Defendants") hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      The anti-discrimination laws are intended to afford pregnant women the same rights as any other employee and provide pregnant women with the dignity and respect they deserve.  Unfortunately, at many companies, a female employee's excitement at such joyous news is tempered by the realization that they will be "mommy tracked," stripped of responsibilities and denied opportunities because management is permeated with the unlawful and discriminatory belief that women cannot be both mothers and dedicated employees.  Ms. Grasso's experiences at Robinson only underscore how pervasive this kind of discriminatory attitude remains to this day.

2.      After sharing the news of her pregnancy with her colleagues and supervisors, Ms. Grasso experienced a sudden change in her standing at Robinson.  Immediately after her pregnancy announcement, Robinson rescinded a promotion previously offered to Ms. Grasso and instead gave this opportunity to a lesser qualified, single male employee without children.

3.      Subsequently, while Plaintiff was on her FMLA-mandated maternity leave, the Company hired a female employee without children and reassigned the majority of Ms. Grasso's job duties to her newly hired replacement.  Further, despite its obligation to restore Ms. Grasso to a substantially similar position upon her return from FMLA leave, when Ms. Grasso did return, the Company instead instituted a change in her working arrangement, subjecting her to a commute of nearly four hours to and from the New York City office.

4.      Despite over five years of dedicated service and strong performance with Robinson, Ms. Grasso found herself suddenly and without justification marginalized in the wake of her pregnancy announcement, as the Company reassigned Ms. Grasso's core job responsibilities and passed her over for significant career-enhancing opportunities in favor of male employees and female employees without children.  Indeed, Ms. Grasso was increasingly the target of several measures designed to phase her out of her position and force her to leave the Company.

5.      Ms. Grasso brings this action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices, including unlawful discrimination against Plaintiff in violation of the New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 et seq. ("NYCHRL"), as well as the Company's retaliation

and unlawful interference with Plaintiff's exercise of her rights under the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA").

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Plaintiff's claims under the FMLA pursuant to 28 U.S.C. § 1331 and 1343, because those claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.  This Court has supplemental subject matter jurisdiction over Plaintiff's related state and city law claims pursuant to 28 U.S.C. § 1367(a).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

8.      Plaintiff will file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") forthwith, alleging violations of Title VII, 42 U.S.C. §§ 2000e et seq.  The charge arises out of the same facts alleged herein.

9.     When the EEOC completes its investigation of the charges and issues Plaintiff's notice of right to sue, Plaintiff will seek leave to amend this Complaint to add claims that Robinson violated Title VII.

10.     Prior to the commencement of this action, a copy of this Complaint was served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

11.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

12.     Plaintiff Casie Grasso is a female employee of Robinson who currently resides in Highland Mills, New York.  She is a citizen of the United States and at all relevant times met the definition of Robinson's "employee" and/or "eligible employee" under all applicable statutes.

13.     Defendant Robinson Home Products Inc. is a New York corporation specializing in the design, development and marketing of kitchen and dining items.  The Company has offices in Buffalo and offices located at 41 Madison Avenue, Fourth Floor, New York, New York 10010.  At all relevant times, Defendant Robinson met the definition of "employer" and/or a "covered employer" under all relevant statutes.

14.     Defendant Bill Gilmartin is a resident of the State of New York and Senior Vice President of Procurement at Robinson.  Gilmartin directly supervised Ms. Grasso's performance from January 2012 to the present.  At all relevant times, Gilmartin was Ms. Grasso's supervisor, and, in that role, he had the authority to discipline and fire Ms. Grasso, direct her work activities, assign her job responsibilities and monitor her performance.  At all relevant times, Gilmartin was an "employer" within the meaning of all applicable statutes.

## FACTUAL ALLEGATIONS

**Ms. Grasso's Employment History With Robinson**

15.     On or about September 1, 2009, Ms. Grasso began her employment with Robinson as a Marketing Manager.[1]

16.     Robinson specializes in the design, development and marketing of kitchen and dining items.

---

[1]     On or about September 1, 2008, Ms. Grasso commenced her employment with Oneida as a Marketing Manager.  Robinson acquired the Oneida license on or about September 1, 2009, at which point Ms. Grasso began working for the Company.

17.     Prior to joining the Company, Ms. Grasso had a long and distinguished career in the marketing world, including working for three years as a Product Manager for Mikasa and as a Global Brand Manager for Toys R Us for almost a year.

18.     At Robinson, Ms. Grasso consistently exceeded standards in all of her performance reviews and received positive feedback from her clients and managers.

19.     For example, during the Fiscal Year 2013, Ms. Grasso earned 49 out of a possible 50 points for her overall appraisal score, which signified that she consistently and significantly exceeded her job requirements in all areas.

20.     The following year, Ms. Grasso continued her outstanding performance, once again earning 49 out of 50 points in her performance review.

21.     In recognition of the fact that Ms. Grasso was consistently a superlative employee, the Company repeatedly promoted her to positions of increasing responsibility.

22.     In March 2010, Ms. Grasso was promoted from Marketing Manager to Senior Marketing Manager.

23.     Less than two years later, in January 2012, the Company promoted Ms. Grasso to Senior Sourcing Manager.

24.     Similarly, in April 2013, Ms. Grasso received yet another promotion when she was tasked with the responsibility of assuming the dual roles of Senior Marketing Manager and Senior Sourcing Manager.

**Ms. Grasso's Promotion Prior to Her Pregnancy Announcement**

25.     Approximately one year later, in March 2014, James Walsh, the Chief Executive Officer at Robinson, approached Ms. Grasso about taking on the marketing role for a new category of products, Cookware.

26.     Mr. Walsh praised Ms. Grasso's performance, explaining that he was confident that Ms. Grasso would successfully handle the sourcing for the Cookware category because she had a good relationship with the factories and because her work on the development for another brand in Dinnerware had been strong.

27.     This promotion further demonstrates that Ms. Grasso was continuing to perform at a high level, a fact the Company unquestionably recognized.

28.     At the time of her appointment to Cookware, Ms. Grasso worked from her home in Highland Mills, New York and commuted an hour and forty-five minutes to the New York City office approximately once or twice a month.

29.     This work arrangement had been in place since January 2013 and contributed to Ms. Grasso's productivity.

**Ms. Grasso's Demotion After Her Pregnancy Announcement**

30.     In late April or early May 2014, Ms. Grasso informed her colleagues and supervisors that she was pregnant.

31.     As Ms. Grasso's expected due date grew near, Robinson unequivocally demonstrated its animus towards pregnant women by discriminating against Plaintiff in the terms and conditions of her employment.

32.     Only two weeks before Ms. Grasso went on maternity leave in October 2014, the Company retracted the opportunity for Ms. Grasso to handle Cookware, and reassigned it to Don Wroblicki, a male employee without children.

33.     When Ms. Grasso objected to this clearly discriminatory behavior, her direct supervisor, Defendant Gilmartin, admitted that Ms. Grasso's pregnancy was the basis for the

Company's decision, explaining that because Plaintiff was unable to travel and visit factories while she was pregnant, allowing her to handle Cookware "didn't make sense" any longer.

34.     Gilmartin further explained that the Cookware category was potentially a better "fit" for Mr. Wroblicki, despite the fact that the only thing that had changed between the promotion decision and the subsequent rescission of the promotion was Ms. Grasso's announcement that she was pregnant.

35.     Gilmartin told Ms. Grasso that, although she would not be working in Cookware, the Company would soon give her the opportunity to handle Glassware.

36.     Although Ms. Grasso had previously made requests to assume the role in Glassware, in early March 2015, Gilmartin told her that Mr. Wroblicki would retain responsibility for the Glass Stemware category, which was the only section of the Glassware category that was still operative at that time.

37.     Several days after Ms. Grasso's attorneys sent a letter to Robinson, the Company reassigned Ms. Grasso to the Glass Stemware category.

38.     However, by this time, the Company had drastically reduced Ms. Grasso's role, as will be detailed in the following paragraphs.

39.     Even with the responsibility for Glass Stemware, Ms. Grasso's current work duties are not commensurate to those she held prior to her pregnancy and the birth of her child. Indeed, Robinson has not been investing in or developing the Glassware category, as evinced by the fact that Glass Stemware is the only section of Glassware that remains active.

**Discrimination After Ms. Grasso Returns to the Company**

40.     In October 2014, Ms. Grasso went on maternity leave.

41.     While Ms. Grasso was on maternity leave, the Company hired Christine Bakelaar, a woman without children, to work in the Marketing Department.

42.     Ms. Bakelaar started working at Robinson within days of Ms. Grasso's first day back after maternity leave.

43.     Ms. Bakelaar was assigned several marketing responsibilities that were previously a major aspect of Ms. Grasso's position as Senior Marketing Manager.

44.     When Ms. Grasso returned from leave in January 2015, she was informed that she could no longer work from home and that the Company was moving her position back into New York.

45.     Gilmartin was fully aware that Ms. Grasso's new working arrangement would subject her to a commute of almost four hours to and from the New York office.

46.     He explained that the "tone" of the organization was changing and that there were unexplained "pressures" and business constraints that necessitated her working from the New York office.

47.     He told Ms. Grasso that the Company was focused on "getting the business back on track," which meant that it needed to "invest in Christine."

48.     During this discussion, Gilmartin also told Ms. Grasso that "***family has got to come first***."

49.     By materially changing the terms and conditions of Ms. Grasso's employment in this manner, it was clear that Defendants were attempting to force Ms. Grasso to quit by making her choose between caring for her child and her job.

50.    Moreover, although Robinson made no exception for Ms. Grasso, the Company has permitted the majority of the sales team as well a business director, customer compliance manager and category manager to continue to work remotely.

51.    Nevertheless, Ms. Grasso elected to remain employed with Defendants, once again demonstrating her commitment and dedication to the Company, even in the face of invidious discrimination.

52.    In response, Defendants merely escalated their discriminatory conduct towards Ms. Grasso.

53.    By way of example only, during the second week of April 2015, Gilmartin told Ms. Grasso that Robinson would not be awarding bonuses because of the Company's financial condition.

54.    However, in May 2015, upon information and belief, a male sales manager, a female marketing manager with no children and a female employee with grown children all received bonuses for the year.

55.    Similarly, in April 10, 2015, Gilmartin informed Ms. Grasso that she had to be in China in two weeks to see certain products in person.

56.    Throughout her five-year tenure at the Company, Ms. Grasso generally received four to six weeks' notice before similar business trips.

57.    Recognizing that the Company had denied her the appropriate amount of notice before such a substantial trip in a transparent attempt to prevent her from attending, Ms. Grasso agreed to rearrange her schedule to take part in the trip.

58.    Incredibly, when Ms. Grasso made arrangements to visit the factories in China, Defendants sent her an e-mail criticizing her for ostensibly not scheduling additional visits.

59.     Ms. Grasso tried to explain that the time constraint of only two weeks' notice prevented her from maximizing her time in China.

60.     Gilmartin responded that "[a]fter a 12 month absence this does not seem like an adequate effort to get back up to speed with our [Dinnerware] partners."

61.     Further evincing that Defendants' conduct was motivated by an unlawful discriminatory animus, members of the Company's management team began to make inappropriate comments that were inordinately focused on Ms. Grasso's childcare responsibilities.

62.     For example, Gilmartin told Ms. Grasso that "**your pregnancy created an added burden on the Robinson side**."  He said that Don Wroblicki and Megan Coleman, members of the sourcing team, had been required to pick up the slack in terms of travelling.

63.     On another occasion, Gilmartin questioned Ms. Grasso's ability to perform her job after she gave birth, expressing doubts about her ability to continue to travel once she became a mother, despite the fact that Plaintiff never gave any indication that she would be unable to fulfill this function.

64.     Clearly, the fact that Ms. Grasso was unable to travel while she was pregnant or during her maternity leave had soured the Company on her performance and affected the way her work was viewed by her manager.

65.     Defendant Gilmartin also made repeated comments about the difficulties of child care and openly wondered whether her husband would be able to take care of their child and whether his position was "stable," an obvious threat to Plaintiff's own job prospects.

66.     On April 30, 2015, the discrimination against Ms. Grasso culminated in the Company stripping her of the remainder of her major job responsibilities, including product

design and innovation, product development, item quotations and sample requests, margin

analysis, photography and packaging development and testing, sample signoff, new product

testing, licensed samples approvals and life cycle management.

67.     These job functions were assigned directly to Ms. Bakelaar.

68.     As a result of this most recent demotion, Ms. Grasso no longer has any

responsibility for marketing or development.  Although Ms. Grasso had built her career around

development and had successfully handled the marketing and development aspects of her role,

Ms. Grasso's work responsibilities were reduced to mere paperwork and compliance.

### AS AND FOR A FIRST CAUSE OF ACTION
**Interference with Plaintiff's Rights under the FMLA**
**(Against Robinson)**

69.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the

preceding paragraphs as if fully set forth herein.

70.     At all times relevant herein, Ms. Grasso was an "eligible employee" within the

meaning of the FMLA.  Similarly, at all times relevant herein, Robison was and is a "covered

employer" within the meaning of the FMLA.

71.     Robinson has violated the FMLA by unlawfully interfering with, restraining, or

denying the exercise of Ms. Grasso's FMLA rights by, *inter alia*, (i) demoting Ms. Grasso for

reasons motivated, either in whole or in part, by her exercise of her rights protected by the

FMLA; and (ii) failing to reinstate Ms. Grasso to the same position or a position equivalent to the

position that she occupied prior to her exercising rights protected by the FMLA.

72.     As a direct and proximate result of Robinson's unlawful conduct in violation of

the FMLA, Ms. Grasso has suffered, and continues to suffer, harm for which she is entitled to an

award of monetary damages and other relief.

73.     Robinson's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Ms. Grasso is entitled to an award of liquidated damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Retaliation in Violation of the FMLA**
**(Against Robinson)**

74.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

75.     At all times relevant herein, Ms. Grasso was an "eligible employee" within the meaning of the FMLA.  Similarly, at all times relevant herein, Robinson was and is a "covered employer" within the meaning of the FMLA.

76.     Ms. Grasso has suffered the following adverse employment actions because she exercised rights protected by the FMLA: (i) Robinson's demotions of Ms. Grasso, decisions which were motivated, either in whole or in part, by Ms. Grasso's exercise of her rights protected by the FMLA; and (ii) Robinson's failure to reinstate Ms. Grasso to the same position or a position equivalent to the position that she occupied prior to her exercising rights protected by the FMLA.

77.     Under the FMLA, an employee "must be reinstated to the same or a geographically proximate worksite (*i.e.*, one that does not involve a significant increase in commuting time or distance) from where the employee had previously been employed."  By changing Ms. Grasso's work arrangement upon her return from maternity leave, Robinson violated the FMLA.  The job that Robinson offered Ms. Grasso upon her return from maternity leave was substantially different, as it required her to commute nearly four hours two and from the New York City office, which interfered with her caregiving responsibilities.

78.     As a direct and proximate result of Robinson's unlawful and retaliatory conduct in violation of the FMLA, Ms. Grasso has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

79.     Robinson's unlawful and retaliatory actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Ms. Grasso is entitled to an award of liquidated damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Discrimination in Violation of NYSHRL**
**(Against all Defendants)**

80.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

81.     Defendants have discriminated against Plaintiff on the basis of her gender, pregnancy and/or caregiver status in violation of the NYSHRL by denying Plaintiff the same terms and conditions of employment available to male employees and female employees without childcare responsibilities.  Plaintiff was subjected to, *inter alia*, discriminatory demotions, denial of exposure and other privileges of employment that are extended to male employees and female employees without children, reassignment of the majority of her job responsibilities to an employee without children and significant adverse changes in her working arrangement.

82.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Retaliation in Violation of NYSHRL
### (Against all Defendants)

83.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

84.     Defendants have retaliated against Plaintiff by, *inter alia*, demoting her, denying her exposure and other privileges of employment that are extended to male employees and female employees without children, stripping her of important job responsibilities, and significantly altering her working arrangement, in violation of the NYSHRL for her decision to take a brief maternity leave.

85.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Aiding and Abetting in Violation of the NYSHRL
### (Against Defendant Gilmartin)

86.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

87.     Gilmartin directly participated in the discriminatory and/or retaliatory conduct perpetrated against Plaintiff, including, but not limited to, demoting Plaintiff, denying her exposure and other privileges of employment that are extended to male employees and female employees without children, reassigning the majority of her job responsibilities to an employee without children, and subjecting her to significant adverse changes in her working arrangement.

88.     At all relevant times, Gilmartin was a Senior Vice President of Procurement and had the ability to control the terms and conditions of Plaintiff's employment, including, but not limited to, the power to terminate her employment.

89.     Gilmartin knowingly or recklessly aided and abetted the unlawful discrimination and retaliation against Plaintiff in violation of the NYSHRL, including, but not limited to, demoting Plaintiff, denying her exposure and other privileges of employment that are extended to male employees and female employees without children, reassigning the majority of her job responsibilities to an employee without children and subjecting her to significant adverse changes in her working arrangement.

90.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Plaintiff is entitled to an award of damages.

91.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

<u>**AS AND FOR A SIXTH CAUSE OF ACTION**</u>
**Discrimination in Violation of New York City Human Rights Law**
**(Against all Defendants)**

92.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

93.     Defendants have discriminated against Plaintiff on the basis of her gender, pregnancy and/or caregiver status in violation of the NYCHRL by denying Plaintiff the same terms and conditions of employment available to male employees and female employees without

childcare responsibilities.  Plaintiff was subjected to, *inter alia*, discriminatory demotions, denial of exposure and other privileges of employment that are extended to male employees and female employees without children, reassignment of the majority of her job responsibilities to an employee without children, and significant adverse changes in her working arrangement.

94.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

95.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### Retaliation in Violation of NYCHRL
### (Against all Defendants)

96.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

97.     Defendants have retaliated against Plaintiff by, *inter alia*, demoting her, denying her exposure and other privileges of employment that are extended to male employees and female employees without children, stripping her of important job responsibilities, and significantly altering her working arrangement, in violation of the NYCHRL for her decision to take a brief maternity leave.

98.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

99.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### Aiding and Abetting in Violation of the NYCHRL
### (Against Defendant Gilmartin)

100.    Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

101.    Gilmartin directly participated in the discriminatory and/or retaliatory conduct perpetrated against Plaintiff, including, but not limited to, demoting Plaintiff, denying her exposure and other privileges of employment that are extended to male employees and female employees without children, reassigning the majority of her job responsibilities to an employee without children, and subjecting her to significant adverse changes in her working arrangement.

102.    At all relevant times, Gilmartin was a Senior Vice President of Procurement and had the ability to control the terms and conditions of her employment, including, but not limited to, the power to terminate Plaintiff's employment.

103.    Gilmartin knowingly or recklessly aided and abetted the unlawful discrimination and retaliation against Plaintiff in violation of the NYSHRL, including, but not limited to, demoting Plaintiff, denying her exposure and other privileges of employment that are extended to male employees and female employees without children, reassigning the majority of her job responsibilities to an employee without children, and subjecting her to significant adverse changes in her working arrangement.

104.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Plaintiff is entitled to an award of damages.

105.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

106.    Gilmartin's unlawful and discriminatory conduct constitutes a knowing, malicious, willful and wanton violation of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment and otherwise unlawful conduct;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not

limited to, loss of past and future income, wages, compensation, seniority, and other benefits of employment;

      E.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

      G.     An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

      H.     An award of punitive damages in an amount to be determined at trial;

      I.     An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

      J.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: July 15, 2015
New York, New York                    Respectfully submitted,

                                       **WIGDOR LLP**

                                       By: _____
                                            Douglas H. Wigdor
                                            Drei Munar

                                       85 Fifth Avenue
                                       New York, NY 10003
                                       Telephone: (212) 257-6800
                                       Facsimile: (212) 257-6845
                                       dwigdor@wigdorlaw.com
                                       dmunar@wigdorlaw.com

                                       *Attorneys for Plaintiff*